IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CANDACE BERRIAN,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:22-cv-02084-JDW |
| | : | |
| **MIDLAND CREDIT** | : | |
| **MANAGEMENT, INC.,** | : | |
| Defendant. | : | |

## MEMORANDUM

Midland Credit Management bought a pool of past-due credit card accounts from Capital One and then tried to collect on those accounts. One of the accounts that Midland purchased belonged to Candace Berrian. Because Ms. Berrian did not realize she had a relationship with Midland, its collection efforts confused her. That confusion led to this lawsuit, in which she alleges Midland violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA") and the Gramm-Leach-Bliley Act ("GLBA") and intentionally caused her emotional distress when it attempted to collect a debt from her. While Ms. Berrian's confusion was understandable, the facts show that Midland didn't do anything wrong. The Court therefore grants it summary judgment.

I.   **BACKGROUND**

A.   **Facts**

On April 18, 2017, Ms. Berrian opened a credit card account with Capital One (USA) N.A. At that time, she signed the Capital One Customer Agreement, which gave

Capital One the right to sell, assign, or transfer the account to a third party without Ms. Berrian's permission. The Agreement stated that if the account was closed, or if it was sold, assigned, or transferred to a third party, Ms. Berrian's obligation to pay any outstanding debt under the Agreement would survive. On September 17, 2020, Capital One sold a pool of unpaid accounts that it had "charged-off" on its books to Midland, including Ms. Berrian's account.

Midland sent Ms. Berrian a "Welcome Letter" on September 22, 2020. That letter included the following information: (a) the fact that Midland had purchased her account from Capital One; (b) that the original account number ended in 3350; (c) that Midland was now the owner and servicer of the account; (d) a new account number; (e) the outstanding account balance of $1,277.75; (f) how to contact Midland to discuss payment options; (g) Ms. Berrian's right to dispute the validity of the debt within 30 days of receiving the letter; and (h) that if Ms. Berrian did not dispute the debt within 30 days, Midland would assume it to be valid. Midland sent Ms. Berrian several more letters, including at least one "Pre-Legal Notification," which informed her that unless she contacted Midland regarding her debt, she might be subject to legal action. Ms. Berrian did not respond to any of these letters.

On January 25, 2022, Midland informed Ms. Berrian that it had filed a lawsuit in the Philadelphia Court of Common Pleas to collect her debt. Ms. Berrian responded by

calling and writing to Midland to settle her debt but was unsuccessful in reaching Midland's attorneys. Ms. Berrian filed three complaints with the Consumer Financial Protection Bureau. On April 26, 2022, Midland reported its attempts to collect on Ms. Berrian's debt to various consumer credit reporting agencies. Ultimately, nothing came of any of these proceedings, and Midland voluntarily dropped its lawsuit and discharged Ms. Berrian's debt in May of 2022.

### B.  Procedural History

Ms. Berrian filed her Complaint against Midland on May 24, 2022. She alleges that Midland violated multiple provisions of the FDCPA, and a provision of the GLBA. She also claims that Midland intentionally inflicted emotional distress because she was pregnant at the time that Midland filed its lawsuit and the stress of litigating had a negative effect on her and her baby's health.

Midland filed a motion to dismiss the Complaint on August 4, 2022. The Motion presented extraneous documents that showed that Midland both owned Ms. Berrian's account and complied with the law. Because the Motion relies on material outside the pleadings, the Court converted the Motion to a summary judgment motion pursuant to Fed. R. Civ. P. 12(d) and provided Ms. Berrian an opportunity to respond. Ms. Berrian filed her response on November 4, 2022, but she did not raise any disputes of material fact or provide any evidence that Midland did not own her debt or comply with the law.

Instead, Ms. Berrian's main argument was that Midland is a dishonest company and that the Court should not trust the evidence that Midland presented.

## II. LEGAL STANDARD

"If, on a motion under Rule 12(b)(6) . . .matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment. . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment

4

as a matter of law when the non-moving party fails to make such a showing. D*odson v. Coatesville Hosp. Corp.*, 773 Fed. Appx. 78, 81 n.6 (3d Cir. 2019) (quotation omitted).

"If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2)-(3). Thus, a moving party is not entitled to summary judgment as a matter of right just because the adverse party does not respond. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (quotation omitted). Instead, the court must conduct a full analysis to determine "whether the moving party has shown itself to be entitled to judgment as a matter of law." *Id.*

### III.   ANALYSIS

#### A.   FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). The Act provides a remedy for consumers when a debt collector attempts to collect a debt in a way that violates one of the Act's substantive provisions. *See Piper v. Portnoff L. Assocs., Ltd.*, 396 F.3d 227, 232 (2005). "To state a claim under the FDCPA, a plaintiff must allege that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt'

as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 280 (3d Cir. 2018) (quotations omitted). In assessing whether a particular debt collection practice violates the FDCPA, the standard is whether the practice would objectively confuse or mislead the "least sophisticated debtor." *Id.* Midland Capital does not challenge the first three elements, so the only issue before the Court is whether it violated a provision of the FDCPA. It did not.

### 1.   15 U.S.C. § 1692c—third party communications

Section 1692c(b) makes it unlawful, subject to certain exceptions, for a debt collector to "communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). Ms. Berrian alleges that, on April 26, 2022, Midland communicated with "numerous third parties" about its attempt to collect her debt. (ECF No. 7.) But she only identifies TransUnion, Equifax, and Experian as recipients of those communications, and Section 1692c(b) permits communications with those credit reporting agencies. Although Ms. Berrian also mentions Credit Karma, which is not a credit reporting agency, she does not allege that Midland communicated any information to Credit Karma.

Ms. Berrian suggests that she can proceed under Section 1692c(b) because Midland communicated false information. But even if that were a basis for a claim under Section 1692c, Ms. Berrian offers no evidence to support her claim. She has alleged it, but Midland offers evidence that establishes that it conveyed truthful information, and Ms. Berrian has not offered evidence in response. Ms. Berrian cannot rely on her allegations to defeat summary judgment though.

### 2.   15 U.S.C. § 1692d—obscene or profane language

The FDCPA forbids debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including the "use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." 15 U.S.C. § 1692d(2). Although the Court applies the "least sophisticated debtor" standard to analyze the language, it will not adopt "bizarre or idiosyncratic interpretations" of words, and "presume[s] a basic level of understanding and willingness to read with care [on the part of the recipient]." *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008).

Language is obscene if it is "[o]bjectionable or offensive to accepted standards of decency." Black's Law Dictionary 741 (ab. 6th ed. 1991). Language is "profane" if it expresses "[i]rreverance toward God or holy things." *Id.* at 840. Midland's debt collection

7

letters do not use any language that might qualify as obscene or profane. Ms. Berrian points to words such as "legal," "judgment," "attorney," "lawsuit," "litigation," and "debt" in its correspondence to her (ECF No. 7), but those are just words about debt collection and legal action. They might be disconcerting, and they might cause stress, but they are not offensive to standards of decency, nor do they impugn something holy.

### 3. 15 U.S.C. §§ 1692e—false representation about the character, amount, and status of the debt

The FDCPA prohibits using "any false, deceptive, or misleading representation or means in connection with the collection of any debt, including "the false representation of . . . the character, amount or legal status of any debt" and "the use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. § 1692e(2)(A), (10). To determine if a communication is false, deceptive, or misleading, the Court again analyzes it from the perspective of the least sophisticated consumer, without adopting "bizarre or idiosyncratic interpretations" and while "presuming a basic level of understanding and willingness to read" the entire communication with care. *Campuzano-Burgos*, 550 F.3d at 298 (quotations omitted).

Midland offers evidence that everything it said about Ms. Berrian's debt was true. Although Ms. Berrian says otherwise, she doesn't provide any factual evidence to support her argument. She also doesn't dispute the amount of the debt or the fact that she signed an Agreement with Capital One that allowed it to sell, assign, or transfer her

account without her permission. Had she read the entire notice with care, she would have understood that Midland had purchased her Capital One account, so she would have had all the information she needed to verify that the amount was correct. Therefore, Midland's statements that Ms. Berrian's debt was "valid, due and owing" and that Midland could take legal action to collect on it was not false or deceptive.

### 4.      15 U.S.C. §§ 1692f—unfair or unconscionable means

Section 1692f(1) prevents a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt, including "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). Ms. Berrian alleges that Midland violated this section because it never had an agreement that created the debt it attempted to collect. But she's wrong. The undisputed evidence shows that she entered into the Agreement with Capital One that created her debt. And Midland has shown that Capital One assigned the Agreement to it, as the Agreement permitted. Because Ms. Berrian has not called into question whether her Agreement with Capital One authorized the amount of debt she owed, as well as the transfer of the account, her claims under Section 1692f(1) fail.

### 5.      15 U.S.C. §§ 1692g—failure to validate the debt

The FDCPA requires a debt collector to furnish five items of information to a consumer either in its initial communication or within five days of that communication:

9

"(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . [and it will be] mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. §§ 1692g(a)(1)-(5). If the consumer disputes the debt in writing within 30 days of the initial communication, the debt collector must cease collection of the debt, and any communications in connection with collection of the debt, until it provides verification from the original creditor or the relevant information sought by the consumer. *See* 15 U.S.C. § 1692g(b). Ms. Berrian's claim fails for two reasons.

*First*, the statute of limitations bars Ms. Berrian's claim. The FDCPA requires a debtor to bring a claim "within one year from the date on which [a] violation occurs." 15 U.S.C. § 1692k(d). Section 1692g applies only to an "initial" communication, so the statute of limitations begins to run on the date of that communication. The Third Circuit has stated, and this Court agrees, that there can only logically be one initial

communication—the first one. *See Peterson v. Portfolio Recovery Assocs., LLC*, 430 Fed. Appx. 112, 114 (3d Cir. 2011). The word "initial" in the statute can't mean anything else. Ms. Berrian therefore had one year from September 22, 2020, to file a complaint under Section 1692g. She didn't meet that deadline, or even come close, so her claim cannot proceed.

*Second*, Midland's initial communication provided all of the required information that Section 1692g(a) requires. Ms. Berrian claims that Midland violated Section 1692g because it did not respond to any of her letters challenging the debt, which she wrote after Midland told her that a lawsuit was coming and because Midland continued to report the disputed debt to consumer credit agencies even after she informed Midland in writing that the debt was disputed. But Ms. Berrian didn't write to Midland to challenge the debt until after January 25, 2022, more than a year after Midland sent the initial communication. She therefore did not complain with 30 days, as Section 1692g(b) requires, so Midland did not have to cease its communications with reporting agencies.

### 6. 15 U.S.C. §§ 1692g—failure to validate the debt

Ms. Berrian points to two subsections of 15 U.S.C. § 1692i that she contends Midland violated. Section 1692i is a venue statute that restricts where a debt collector may sue a consumer. It is not a substantive provision that provides a cause of action. Therefore, Ms. Berrian's claims based on this provision are meritless as a matter of law.

### 7. 15 U.S.C. §§ 1692g—failure to validate the debt

The FDCPA makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not participating." 15 U.S.C. § 1692j(a). Ms. Berrian claims Midland violated this provision by sending her a Pre-Legal Notification letter on April 26, 2022, which she alleges listed Capital One as the creditor. But when one reads the entirety of the form, it's clear that Capital One is no longer Ms. Berrian's creditor and is not participating in the collection. For example, the Notification refers to Capital One as the "Original Creditor" or notes that the "Creditor at Charge-off *was* Capital One." (ECF No. 2-2 (emphasis added).) It also notes in a number of places that the "Current Owner," "Current Servicer," and "Current Creditor" is Midland. (*Id.*) Therefore, even the least sophisticated debtor would understand that Capital One was no longer Ms. Berrian's creditor, that Midland was the current creditor, and that Midland was the only party taking part in the collection of the debt.

### B. GLBA

Ms. Berrian can't bring claims under the GLBA. The GLBA makes it illegal for "any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to

another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C. § 6821(a)(2). Ms. Berrian claims Midland violated the law by obtaining her financial information and making a false claim to her debt, which it then reported to consumer reporting agencies. Although the GLBA is meant to regulate financial institutions, it creates no private right of action. *See Grooms v. Discover Fin. Serv.*, No. 21-cv-4265, 2021 WL 6072809 at *1 n.3 (E.D. Pa. Dec. 22, 2021) (surveying cases).

### C. Intentional Infliction Of Emotional Distress

Pennsylvania law requires four elements to show intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) that is intentional or reckless; (3) that causes emotional distress; (4) which is severe. *See Dehart . HomeEq Servicing Corp.*, 679 Fed. Appx. 184, 190 (3d Cir. 2017). Courts find intentional infliction of emotional distress only when conduct is "so atrocious and utterly intolerable in a civilized community." *Clark v. Twp. of Falls*, 890 F.2d 611, 623 (3d Cir. 1989) (quotations omitted). When someone just insists upon his legal rights in a permissible way, that does not constitute intentional infliction of emotional distress, even if the conduct is certain to cause emotional distress. *See* Rest. (Second) of Torts § 46 cmt. g. (The Court relies on the Restatement because the Pennsylvania Supreme Court does so in intentional infliction of emotional distress claims. *See, e.g., Schmidt v. Boardman Co.*, 11

A.3d 924, 951 (Pa. 2011).) While the Court sympathizes with Ms. Berrian's stress, and the physical manifestation of that stress, Midland did nothing outrageous. It sought to protect its legal rights and engaged in run-of-the-mill debt collection efforts that do not subject it to tort liability.

## IV. CONCLUSION

Ms. Berrian struggled to understand how she came to be in contact with Midland, and her confusion was understandable. But Midland had the right to collect her debt, and it didn't do anything wrong when it sought to collect. Therefore, the Court will grant Midland summary judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

Dated: December 16, 2022